**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 17-cv-01497-CMA-NYW

ASIA O'CONNOR,

    Plaintiff,

v.

RAM INTERNATIONAL 1 LLC, *d/b/a* C.B. & Potts,
WESTMINSTER 73 LLC, *d/b/a* C.B. & Potts,
RAM INTERNATIONAL HOLDING CO, LLC,

    Defendants.

---

**ORDER AFFIRMING AND ADOPTING MARCH 26, 2018 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge Nina Y. Wang (Doc. # 87), wherein she recommends that this Court grant Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. # 61.) Plaintiff timely filed an Objection to Magistrate Judge Wang's Recommendation on April 9, 2018. (Doc. # 89.) Defendants filed a Response to Plaintiff's Objection on April 19, 2018, arguing in support of the Recommendation. (Doc. # 95.) Plaintiff replied on May 3, 2018. (Doc. # 97.)

The Court has conducted a de novo review of this matter, including reviewing all relevant pleadings, the Recommendation, Plaintiff's Objection thereto, Defendants'

Response, and Plaintiff's Reply. Based on this review, the Court affirms and adopts Magistrate Judge Wang's Recommendation.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This action arises from the alleged sexual assault of Plaintiff Asia O'Connor by Timothy Chavez on or around January 16, 2015. At the time of the alleged assault, Plaintiff was sixteen years old and employed by Defendants as a hostess at their C.B. & Potts restaurant in Westminster, Colorado. (Doc. # 60 at ¶ 2.) Mr. Chavez was employed by Defendants at the same restaurant. (*Id*. at ¶ 13.) At the time Defendants hired Mr. Chavez in July 2014, he was a convicted felon and registered sex offender; he had been convicted in 2010 of sexual assault on a minor and felony assault causing bodily harm. (*Id.* at ¶ 14.) Plaintiff alleges that Mr. Chavez was also on parole and wearing an ankle bracelet at the time of his hiring. (*Id.* at ¶ 15.) The parties dispute whether Defendants knew of Mr. Chavez's criminal history at the time of his hiring.

On the day of the alleged assault, Plaintiff was working at Defendants' restaurant. (*Id*. at ¶ 27.) Plaintiff states that she was taking a break outside of the restaurant whereupon "Mr. Chavez followed her, forced her into an isolated area, and sexually assaulted her." (*Id*. at ¶ 30.) After breaking free from Mr. Chavez, Plaintiff returned to the restaurant and reported the assault to her manager, who escorted her to his office in the back of the restaurant. (*Id*. at ¶ 33.) Plaintiff claims the manager did not call law enforcement nor her parents at that time. (*Id.*) She further states that, after the manager left her alone in the office, Mr. Chavez entered the office and attempted to intimidate her. (*Id.*) She reports that she then fled C.B. & Potts to another establishment,

where Mr. Chavez pursued her and continued his effort to intimidate her. (*Id.* at ¶¶ 34–37.)

Plaintiff alleges that Defendants' restaurant management team permitted Mr. Chavez to continue working that night but did not ensure that she got home safely. (*Id.* at ¶ 38.) Mr. Chavez was not disciplined for the incident and was later terminated for other reasons, she states. (*Id.*)

Plaintiff voluntarily left her employment at C.B. & Potts on or around February 1, 2015. *See* (Doc. # 61 at 5; Doc. # 61-1 at 1.)

On October 17, 2016, Plaintiff filed a charge of discrimination against Defendants with Equal Employment Opportunity Commission ("EEOC"). (*Id*. at ¶ 58.) On November 21, 2016, Defendants responded to the charge, denying that C.B. & Potts was legally responsible for the alleged assault and asserting that the filing of the charge was untimely and that Plaintiff was not entitled to equitable tolling. (Doc. # 48-6.) The EEOC issued a notice of right-to-sue to Plaintiff on April 19, 2017. (Doc. # 60 at ¶ 60.)

On June 20, 2017, she filed the instant action against Defendants. (Doc. # 1.) In the operative complaint—Plaintiff's Second Amended Complaint ("SAC")—Plaintiff asserts three claims against Defendants: (1) gender/sexual discrimination in violation of Title VII of the Civil Rights Act of 1968, 42 U.S.C. § 200e-2(a)(1); (2) a state law claim for negligence in hiring, retention, supervision, and training; and (3) outrageous conduct. (Doc. # 60.) Currently before the Court is Defendant's Partial Motion to Dismiss Plaintiff's claims for (1) Title VII discrimination; (2) negligent hiring; and (3) outrageous conduct pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. # 61.)

## II.  STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. Pro. 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommended] disposition that has been properly objected to." Plaintiff has filed an Objection to the Recommendation, essentially challenging the Recommendation in its entirety. (Doc. # 89.) The Court will therefore conduct a de novo review of the issues. In so doing, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* Any arguments raised for the first time in objections are deemed waived and need not be considered. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

## III.  LAW

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The scope of the allegations may not be "so general that they encompass a wide swath of conduct, much of it innocent" or else the plaintiff has 'not nudged [his] claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  A plaintiff may not rely on mere

labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). When considering a Rule 12(b)(6) motion to dismiss, a court must disregard facts supported by documents other than the complaint. *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).

## IV. ANALYSIS

### A. CLAIM ONE—TITLE VII DISCRIMINATION

Title VII requires an employee challenging an employment practice to file a charge of discrimination with the EEOC within "300 days after the allegedly unlawful act." *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1163 (10th Cir. 2007) (citing 42 U.S.C. § 200e-5(e)(1)). The timely filing requirement is like a "statute of limitations" and is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Courts construe equitable exceptions to this timeframe narrowly, generally allowing tolling in cases of active deception where the complainant was induced or tricked by the adversary into allowing the filing deadline to pass. *Irwin v. Dep't of Veterans Affairs* 498 U.S. 89, 90 (1990) (citing *Glus v, Brooklyn E. Dist. Terminal*, 359 U.S. 231 (1959); *Holmberg v. Armbrecht,* 327 U.S. 392 (1946)).

Defendants argue that because the EEOC charge was untimely filed and there is no justification for equitably tolling the filing requirement, Plaintiff's Title VII claim must be dismissed. (Doc. # 81 at 11–12.) Plaintiff does not contest that her EEOC charge

was not timely filed. (Doc. # 89.) Instead, Plaintiff argues that her Title VII complaint should not be dismissed because (1) it was in fact filed timely pursuant to Colo. Rev. Stat. §§ 13-81-101(3) and -103(1)[1] ("the Colorado Saving Statute"); or, alternatively, (2) that the statute of limitations should be equitably tolled based on: (a) her minority status and ignorance of the law at the time the alleged conduct occurred; (b) the psychological distress she suffered as a result of the alleged conduct; and (c) Defendants' failure to advise her of her rights and to give her notice about filing a charge with EEOC. (Doc. # 77.)

Magistrate Judge Wang agrees with Defendants, finding that the Colorado Saving Statute does not toll the filing deadline and that Plaintiff has not plead sufficient facts to entitle her to equitable tolling. (Doc. # 87 at 4–11.) Plaintiff raises three objections to Magistrate Judge Wang's conclusion. First, Plaintiff argues that the issue of whether Title VII's statute of limitations should be tolled for minors until the age of majority is a novel question of law. Plaintiff proposes that, when it addresses this "new question," the Court should hold that "where a statue of repose exists that implicates a work share agreement… the [federal] Administrative Agency should give deference to the state [saving] statute". (Doc. # 89 at 12.) Second, Plaintiff argues that her

---

[1] The statute provides, "When in any of the statutes of the state of Colorado a limitation is fixed upon the time within which a right of action…may be asserted…or an action…may be brought…and the true owner of said right is a person under disability [*i.e.*, under eighteen years of age] at the time such right accrues," that person may proceed with that action "within the period fixed by the applicable statute of limitations or within two years after removal of the disability [*i.e.*, turning eighteen years of age], whichever period expires later." Colo. Rev. Stat. §§ 13-81-103(1)(c); *see also* Colo. Rev. Stat. § 13-81-101(3).

psychological-psychiatric condition, when "coupled with [her] youth, lack of education, and the withholding of information by the employer, created an equitable basis for holding that the filing was not untimely." (*Id.* at 14.) Third, Plaintiff implores the Court to find sufficient basis for equitable tolling to prevent "Defendants, who had unclean hands, from asserting bar because of late filing." (*Id.* at 13.)

First, the Court disagrees with Plaintiff's characterization of the question of whether Colorado's Saving Statute should apply to federal Title VII Claims as novel. The plain language of the Colorado Saving Statute limits its application to statutes of limitations set by state law: "When in any of the statutes of **the state of Colorado** a limitation is fixed upon the time within which a right of action… or any other right may be asserted…" Colo. Rev. Stat. §§ 13-81-101(3), -103(1) (emphasis added). Title VII is a federal statute with its own filing requirements. Colorado's Saving Statute clearly does not apply. *Brown v. Hartshore Pub. Sch. List. No. 1*, 926 F.2d 959, 961 (10th Cir. 1991) (abrogated on other grounds) ("When Congress has provided a federal statute of limitation for a federal claim… state tolling and saving provisions are not applicable.") Additionally, the Court notes that there is no express statutory provision in Title VII exempting minors from the statute of limitations. 42 U.S.C. § 2000e–5(e)(1). Furthermore, other courts under similar circumstances have found state saving statutes to be inapplicable to Title VII claims and declined to equitably toll on the basis of infancy. *Cady v. Golden Arch Incorp.*, No. Civ.A. 02-2601, 2003 WL 21241422, *2 (D. Kan. May 27, 2003) (finding that, despite the plaintiff receiving a right-to-sue letter from the EEOC, Kansas' saving statue, which tolls the claims of minors until one year after

7

turning the age of majority, does not apply to Title VII claims). The Court finds the plain language of the Colorado Saving Statute and the case law analyzed by Magistrate Judge Wang to be persuasive and accordingly dismisses Plaintiff's objection thereto.[2]

Second, the Court disagrees with Plaintiff's objection that her age, lack of education, psychological distress, and Defendants' failure to inform Plaintiff of her rights should cumulatively entitle her to equitable tolling. Courts equitably toll Title VII claims only under exceptional circumstances, *Biester v. Midwest Servs. Inc.*, 77 F.3d 1264, 1267 (10th Cir. 1996), and neither minority status nor ignorance of the law fits within the narrow exceptions courts have recognized. *See, e.g., Montoya v. Chao*, 296 F.3d 952, 958 (10th Cir. 2002) (holding that the plaintiff's limited education and little understanding of Title VII were insufficient reasons to equitably toll the timeframe); *Catone v. Brink*, 488 F.Supp.2d 214, 214–18 (N.D.N.Y. 2007) (concluding that employee's infancy at the time of the alleged unlawful act was not an extraordinary circumstance justifying equitable tolling); *Ashton ex rel. Ashton v. Okosun*, 266 F.Supp.2d 399, 403 (D. Md. 2003) (same). As for Plaintiff's alleged emotional distress, *see* (Doc. # 60 at ¶¶ 18–20), Magistrate Judge Wang observes that "'the Tenth Circuit has never held that an

---

[2] The Court is not persuaded by Plaintiff's effort to distinguish the instant case from the cases analyzed by Magistrate Judge Wang. Plaintiff erroneously asserts that *Brown*, 926 F.2d 959, is not a Title VII case, which it in fact is. Plaintiff also attempts to undermine the analysis of *Cady*, 2003 WL 21242422, on the basis that it is unreported and by misconstruing the facts of the case. (Doc. # 89 at 11.) While *Cady* was not published, it has been positively cited for the same premise by a published case—*See Hale v. Emporia State Univ.*, 266 F.Supp.3d 1261 (D. Kan. 2017)—and the Court still finds its reasoning instructive. Moreover, the efforts to distinguish the cases are essentially moot as the case law is simply bolstering the conclusion already provided by the plain language of the statutes.

individual's mental incapacity entitles [her] to equitable tolling'" and goes on to also find that Plaintiff did not allege sufficiently specific facts regarding her psychological treatment to enable the Court to equitably toll the statute on that basis. (Doc. # 87 at 10) (quoting *Harms v. IRS*, 321 F.3d 1001, 1006 (10th Cir. 2003)). The justifications for equitable tolling asserted by Plaintiff do not fit within the narrow exceptions permitted by courts, and Plaintiff cannot cure the defect by instructing the Court to consider the justifications cumulatively.

      Finally, the Court is not persuaded by the fundamental fairness argument that Plaintiff should be allowed to proceed with her Title VII claim because it is what is "right" or because Defendants have "unclean hands." (Doc. # 89 at 13.)  Plaintiff's assertion that Defendants have "unclean hands" is conclusory.  Furthermore, as previously discussed, courts equitably toll the Title VII filing requirement only under extraordinary circumstances and Plaintiff does not point to precedent in which courts have equitably tolled on the basis of defendants having "unclean hands." *Ashton ex rel. Ashton*, 266 F.Supp.2d at 399. Therefore, even if Plaintiff had supported this conclusory assertion with factual allegations, the Court would not be able to equitably toll on that basis. Moreover, the legislature would not have created a timing requirement for Title VII if it intended all alleged unlawful employment activity, regardless of when it occurred, to be actionable. The Court cannot ignore the statutorily-provided timing requirement and precedent in an effort to reach what Plaintiff considers a fair outcome. Accordingly, the Court dismisses Plaintiff's objections and adopts Magistrate Judge Wang's conclusion that the Title VII claim was untimely filed.

## B.     CLAIM TWO—NEGLIGENT HIRING

Under Colorado law, "[to] establish a claim based on negligence, a plaintiff must show: (1) the existence of a legal duty to the plaintiff; (2) that defendant breached that duty; and (3) that the breach of the duty caused the harm resulting in damages to the plaintiff." *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005). Whether a defendant in a particular negligence action owes a legal duty to the plaintiff is a question of law for the court to decide. *Bath Excavating & Constr. Co. v. Wills*, 847 P.2d 1141, 1147 (Colo. 1993).

The scope of the employer's duty in exercising care in a hiring decision depends largely on the anticipated degree of contact the employee will have with other persons in performing his or her employment duties. *Connes v. Molalla Transp. Sys., Inc.,* 831 P.2d 1316, 1322 (Colo. 1992). When employment calls for minimal contact between the employee and other persons, there may be no reason for the employer to investigate beyond obtaining past employment information and personal data. *Id.* In contrast, when the job requires frequent contact with members of the public or close contact with particular persons as a result of special relationship between those persons and the employer, the employer's duty is no longer satisfied by a mere review of personal data disclosed by the applicant. *Id*. Nevertheless, an employer does not have a duty to obtain and review official records of an applicant's criminal history absent circumstances "antecedently" giving the employer reason to believe the job applicant would constitute an undue risk of harm to members of the public. *Id.* at 1323. "The key word in this

formulation, 'antecedently,' refers to the time of hiring." *Raleigh v. Performance Plumbing & Heating*, 130 P.3d 1011, 1017 (Colo. 2006).

At issue in the instant case is whether Defendants had a legal duty to perform a criminal background check on Mr. Chavez at the time they hired him. Defendants contend that the negligent hiring claim should be dismissed because the SAC fails to allege that Defendants had knowledge of Mr. Chavez's criminal background at the time of hiring, and that without such knowledge, Defendants had no duty to perform a background check prior to hiring. (Doc. # 61 at ¶ 8, # 81 at ¶ 1.) In her analysis of whether Defendants had a duty to conduct a background check on Mr. Chavez, Magistrate Judge Wang assumes without deciding that Mr. Chavez's position required frequent contact with the public. (Doc. # 87 at 12.) Magistrate Judge Wang agrees with Defendants that Plaintiff failed to plead sufficient facts from which the Court could conclude that Defendants knew or should have known of Mr. Chavez's criminal history prior to or at the time of hiring. (*Id.* at 15.)

Plaintiff objects, stating that Magistrate Judge Wang errs "based on a misperception that Defendants did not know at the time of hiring Chavez that he was a convicted felon." (Doc. # 89 at 3.) Plaintiff then restates the allegations contained in the SAC and protests Magistrate Judge Wang's finding that they are insufficient. *Id.* Plaintiff also attaches, for the first time, Mr. Chavez's employment application as evidence of Defendants' knowledge of Mr. Chavez's criminal conviction at the time of hiring. (Doc. # 89-1.) Defendants, in turn, object to the inclusion of the attachment as an improper effort by Plaintiff to retroactively amend the Complaint. (Doc. # 95 at 2.)

11

With respect to Defendant's knowledge of the risk Mr. Chavez posed, Plaintiff alleges the following facts:

- Defendants hired Mr. Chavez to work at their C.B. & Potts restaurant on July 16, 2014, (Doc. # 60 at ¶ 13);

- At the time Defendants hired Mr. Chavez, he was a convicted felon, convicted of sexual assault on a minor child in 2010, (*id*. at ¶ 14);

- Mr. Chavez was on parole and wearing an ankle bracelet at the time he was hired, (*id*. at ¶ 15);

- Mr. Chavez disclosed to Defendants that he was a convicted felon at the time he was hired, **or shortly after being hired**, (*id*. at ¶ 17) (emphasis added);

- On August 8, 2014, Mr. Chavez completed a form in which he indicated that he was a convicted felon, (*id*. at ¶ 17);

- Information regarding Mr. Chavez's prior criminal history "was known **and/or available information**, (*id.* at ¶ 20) (emphasis added); and

- It is customary for businesses like the one operated by Defendants to perform criminal background checks on employment applicants who disclose criminal histories, (*id*. at ¶ 18).

After conducting a de novo review, the Court dismisses Plaintiff's objections and agrees with Magistrate Judge Wang's conclusion that the allegations in the SAC fail to state a plausible negligent hiring claim.[3] The SAC is devoid of any allegations

---

[3] In so deciding, the Court looks to the allegations contained within the "four corners" of the Complaint and does not consider any additional evidence submitted by Plaintiff and

whatsoever regarding Defendants' **antecedent** knowledge of Mr. Chavez's "attributes of character or prior conduct" that would trigger a duty to perform a criminal background check under Colorado law prior to hiring him. *See Connes*, 831 P.2d at 1323. While Plaintiff alleges Defendants could have accessed Mr. Chavez's criminal history, her SAC fails to provide factual support that Defendants actually knew of his criminal history on or before July 16, 2014. In fact, the SAC states "Defendants *would have known* of the sexual criminal conviction and that Mr. Chavez posed a danger to females [had they conducted a background search]" and that Mr. Chavez reported his criminal conviction August 8, 2014, **after** he was hired.[4] (Doc. # 60 at ¶ 21.) These allegations suggest that Defendants actually did not have knowledge of Mr. Chavez's criminal history before or at the time of hiring. As Magistrate Judge Wang emphasizes, "the duty to further investigate arises **only** when 'circumstances antecedently giving the employer reason believe that the job applicant…would constitute an undue risk of harm." (Doc. # 87 at 15) (emphasis added) (quoting *Connes*, 831 P.2d at 1322). The Court therefore agrees

---

not referred to in the Complaint. *Jackson*, 952 F.2d 1260 at 1261; *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

[4] Plaintiff alleges that industry custom was to perform background checks on employment applicants who disclose a criminal history. However, as Magistrate Judge Wang notes, whether Defendants adhered to industry standards or had insufficient policies in place is immaterial for purposes of a negligent hiring claim regarding a specific individual. *See Maiteki v. Marten Transp. Ltd.*, 2015 WL 5996760, at *21 (D. Colo. Oct. 15, 2015).

with Magistrate Judge Wang's analysis and concludes that the facts alleged regarding the negligent hiring component of Claim 2 are insufficient as a matter of law.[5]

## C.  CLAIM THREE—OUTRAGEOUS CONDUCT

In Colorado, an outrageous conduct claim requires the following elements: "(1) [that] the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff's severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Nasious v. Two Unknown B.I.C.E. Agents at Arapahoe Cty. Justice Ctr.*, 657 F.Supp.2d 1218, 1232 (D. Colo. 2009). The level of outrageousness required to state a claim is extremely high; conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1350 (Colo. 1988) (quoting *Rugg v.* McCarty, 476 P.2d 753, 756 (1970) (quoting Restatement (Second) of Torts), supra, § 46 cmt. d (1965))). The question of whether conduct is outrageous is generally one of fact to be determined by a jury, but the Court must first determine whether reasonable persons could differ on the question. Restatement (Second) of Torts § 46 cmt. h (1965); *Price v. Federal Express Corp.*, 660 F.Supp. 1388, 1396 (D. Colo. 1987).

Defendants contend Plaintiff failed to state a claim of outrageous conduct because (1) an outrageous conduct claim requires affirmative action and the SAC does not allege affirmative action by Defendants; and (2) Defendants' alleged conduct is not

---

[5] The Court's finding that Plaintiff's allegations are insufficient for purposes of the negligent hiring claim does not impact the other components of Claim II not at issue in the current motion—namely, the negligent supervision, training, and retention claims.

14

sufficiently outrageous. Magistrate Judge Wang agreed in part with Defendants, finding that Plaintiff's allegations of Defendants' actions do not rise to the level of outrageousness required to state a claim.

Plaintiff objects, arguing that (1) Magistrate Judge Wang "erroneously [held] that the conduct is not shocking enough" and (2) that she improperly invaded "the province of the jurors to evaluate the totality of facts and determine [whether] Defendants' 'insensitivity'…was actionable." (Doc. # 89 at 6–7.)

Plaintiff bases her outrageous conduct claim on Defendants' conduct following the alleged assault. Specifically, her SAC alleges:

- "After being sexually assaulted, Defendants' management personnel failed to protect Plaintiff," (Doc. # 60 at ¶ 1);
- Defendants' management personnel did not immediately report the assault to law enforcement nor notify Plaintiff's parents, (*id.* at ¶ 60);
- The manager left Plaintiff alone in his office where Mr. Chavez then entered and threatened her to not report the assault, (*id. at* ¶ 33);
- Defendants did not ensure Plaintiff's safe return home, (*id.* at ¶ 38); and
- When co-workers harassed and stigmatized Plaintiff as a result of the assault, Defendants did not reprimand or discipline those co-workers, (*id.* at ¶¶ 3, 111).

First, the Court overrules Plaintiff's objection to Magistrate Judge Wang's finding that the allegations in the SAC are insufficient to meet the high bar of an outrageous conduct claim. In reaching this conclusion, the Court emphasizes the "extremely high" level of outrageousness required for an outrageous conduct claim. *See, e.g., Reigel v.*

*SaveSeniorCare L.L.C.*, 292 P.2d 8977, 991 (Colo. App. 2011) (finding that although nurses were abrupt, irresponsible, lacking in sensitivity, and inattentive when monitoring a patient, such conduct was insufficient for an outrageous conduct claim); *Lindeman v. The Corp. of the Pres. of the Church of Jesus Christ of Latter-Day Saints*, 43 F.Supp.3d 1197, 1214–15 (D.Colo. 2014) (holding that the conduct complained of—exposing the plaintiff to the Sunday School teacher with whom she had a sexual relationship while she was a minor and then blaming and attacking the plaintiff for the relationship—did not constitute outrageous conduct).[6] In this case, the allegations in the SAC largely center on Defendants' inaction and alleged lack of sympathy for Plaintiff's well-being following the sexual assault.[7] Plaintiff alleges Defendants did not immediately report the assault to law enforcement, but she acknowledges law enforcement were notified the following day. (Doc. # 60 at ¶ 42.) Plaintiff does not allege that Defendants deliberately allowed Mr. Chavez to have renewed access to Plaintiff nor that Defendants encouraged or instructed employees to harass her. Accordingly, the Court respectfully disagrees with Plaintiff's objection that Magistrate Judge Wang's Recommendation is "erroneous" and finds that the SAC fails to state an outrageous conduct claim.

---

[6] The Court finds unpersuasive Plaintiff's effort to distinguish *Lindeman*. Even though the facts of *Lindeman* are not perfectly analogous to the instant case, it is still illustrative of the high bar for stating an outrageous conduct claim.

[7] A claim for outrageous conduct can be based on inaction under certain circumstances. *See, e.g., DeCicco v. Trinidad Area Health Association,* 573 P.2d 559, 562 (Colo. App. 1977) (determining that Defendant's refusal to send the only ambulance in the county—as the result of personal animus—which required an ambulance from out of state to retrieve the critically-ill person and resulted in a substantial delay amounted to outrageous conduct when the person died shortly after arriving to the hospital). However, in the instant case, the inaction alleged is not sufficiently extreme and objectionable to be actionable.

Second, the Court also overrules Plaintiff's objection that Magistrate Judge Wang is "invading the province of jurors." As discussed above, it is up to the Court to first determine as a threshold issue whether allegations of outrageous conduct are sufficient as a matter of law. *Price*, 660 F.Supp. 1388 at 1396; *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999).

## V.  CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Magistrate Judge Wang's Report and Recommendation is AFFIRMED and ADOPTED as an Order of this Court (Doc. # 87);

2. Defendants' Partial Motion to Dismiss (Doc. # 61) is GRANTED;

3. Plaintiff's Claims One and Three are DISMISSED WITH PREJUDICE;[8]

4. Plaintiff's Claim Two as to negligent hiring is DISMISSED WITH PREJUDICE. The other facets of Claim Two—allegations of negligent supervision, training, and retention—remain.

DATED:  June 19, 2018

BY THE COURT:

*Christine M Arguello*

CHRISTINE M. ARGUELLO
United States District Judge

---

[8] Considering the totality of circumstances in this case and the number of opportunities Plaintiff has had to amend her Complaint, the Court finds that affording the Plaintiff yet another opportunity to amend to assert a plausible cause of action would be futile.  *See Grossman v. Novell, Inc.,* 120 F.3d 1112, 1126 (10th Cir. 1997).